BILAL A. ESSAYLI
Acting United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
SOLOMON KIM (Cal. Bar No. 311466)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2450
     Facsimile: (213) 894-2979
     E-mail:    solomon.kim@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-00078-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT TONMOY SHARMA'S APPLICATION TO MODIFY HIS BOND CONDITIONS; DECLARATION OF SOLOMON KIM |
| v. | |
| TONMOY SHARMA, | |
| Defendant. | |

   Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Kim, hereby files its opposition to defendant TONMOY SHARMA's application to modify his bond conditions.

   This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, the attached exhibits and declaration, and such further evidence and argument as the Court may permit.

| | | |
|---|---|---|
| 1 | Dated: August 4, 2025 | Respectfully submitted, |
| 2 | | BILAL A. ESSAYLI |
| 3 | | Acting United States Attorney |
| 4 | | CHRISTINA T. SHAY |
| 5 | | Assistant United States Attorney |
| | | Chief, Criminal Division |
| 6 | | _____/s/_____ |
| 7 | | SOLOMON KIM |
| | | Assistant United States Attorney |
| 8 | | Attorneys for Plaintiff |
| | | UNITED STATES OF AMERICA |

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Tonmoy Sharma is the lead architect of a healthcare fraud conspiracy involving over $170 million in fraudulent billing and bribes. In recognition of defendant's extensive fraudulent conduct and significant flight risk, the Court permitted him to be released on a $500,000 bond, contingent upon the subsequent posting of an affidavit of surety with justification, secured by real property. (See dkt. 18.) Despite owning a home in Orange County currently valued at approximately $3 million, defendant now seeks to remove all collateral securing the bond and replace it with two unsecured sureties totaling $120,000--just a quarter of the original bond amount. (See PSA Report at 2; Dkt. 47.) Defendant's proposed modification is inadequate, and the Court should deny his request.

Defendant presents a substantial flight risk that cannot be adequately mitigated by his proposed bond modification. He is a citizen of India with significant and ongoing ties abroad. His mother, sister, and brother--all of whom he communicates with regularly--reside in India. (PSA Report at 2.) He also maintains regular contact with another sister who lives in London. (Id.) Defendant's travel history further confirms his extensive international connections. Over a four-month period in 2025, for example, he traveled to India, Germany, and England, and he was arrested in the instant matter while returning from India. (Declaration of Solomon Kim ("Kim Decl."), Ex. 1 at 2; PSA Report at 2.) Similarly, in 2024, he traveled to India, Montreal, Dubai, Hong Kong, San Francisco, Japan, and England, including multiple visits to certain locations. (Kim Decl., Ex. 1 at 2-3.)

Defendant's foreign ties are further underscored by the

3

significant transfers of funds to his home country.  A review of a Wells Fargo account ending in 0314, held jointly by defendant and co-defendant Paul Khor, shows transfers of over $530,000 to India, in addition to nearly $200,000 transferred via Wise, a global money transfer service, between 2021 and 2024.[1]  (Kim Decl., Ex. 2.) Another Citibank account ending in 3787, under co-defendant Khor's name, reflects additional Wise transfers totaling more than $250,000 between 2022 and 2023.[2]  (Id.)  In short, defendant lacks any meaningful ties to this district.  His entire family resides abroad, and he has no employment in the United States, let alone this district. (PSA Report at 2-3.)

In addition, defendant now has every incentive to flee following his indictment in this matter.  Defendant faces a statutory maximum sentence of twenty years for each wire fraud count, five years for the conspiracy count, and up to ten years for each illegal renumerations count.  Based on the substantial loss amount attributable to his scheme, defendant's anticipated Guidelines range is 151-188 months of imprisonment.[3]  The evidence against defendant is substantial.  Most notably, a <u>dozen</u> individuals and entities, including former employees and contractors of defendant, have signed plea agreements, nearly all of whom have agreed to cooperate with the

---

[1] The account shows another transfer of $100,000 to an account in India on August 20, 2020--one day before defendant was added as a signatory to the account.

[2] These transactions are merely those that can be readily identified as being sent abroad, and therefore may represent only a fraction of defendant's international financial activity.

[3] This is based on a criminal history category of I and a total offense level of 34, which includes enhancements for loss amount between $25 million and $65 million, 10 or more victims, aggravating role, vulnerable victims, and reductions for zero-point offender and acceptance of responsibility.

government, admitting to participating in defendant's fraudulent scheme.[4]

Furthermore, defense counsel has informed the government that defendant is allegedly unable to secure his bond using his home $3 million home because it is fully encumbered by one or more civil judgments, leaving no remaining equity.[5] Given his significant financial liabilities in the United States, along with his ties and access to resources abroad, defendant has the means and incentive to flee the country rather than face accountability for his conduct. A $120,000 unsecured bond is grossly inadequate to mitigate this risk. Accordingly, the government respectfully requests that the Court deny defendant's motion to modify his bond conditions.[6]

---

[4] Case Nos. CR 19-00105-DMG; 19-00106-DMG; 19-00109-DMG; 19-00123-DMG; 19-00157-DMG; 20-00010-DMG; 20-00011-DMG; 20-00093-DMG; 20-00100-DMG; 20-00121-DMG; 21-00011-DMG; and 22-00103-DMG.

[5] Defendant has yet to provide any proof of these alleged encumbrances.

[6] Defendant's surrendering of his passport is insufficient to mitigate flight risk where, as here, defendant has substantial foreign ties, a demonstrated pattern of international travel, access to financial resources abroad, and faces serious criminal penalties for his extensive fraud. See United States v. Bowman, No. 24-MJ-01241-Duty, WL 1122508 (C.D. Cal. Mar. 11, 2024) (detention appropriate based on defendant's: significant prison exposure arising from large loss amount; strong evidence of guilt; foreign citizenship; and access to financial resources outside the United States, despite defendant's proffer to surrender his passport and post a bond secured by his $3 million house).